# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **LEVI SPRINGER,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:12cv00158 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **C/O BROWN #1, et al.,** | ) | By: PAMELA MEADE SARGENT |
| Defendants. | ) | United States Magistrate Judge |

The pro se plaintiff, Levi Springer, is an inmate at Red Onion State Prison, ("ROSP"). This case is before the court on the plaintiff's Motion For Temporary Restraining Order And Preliminary Injunction, (Docket Item No. 12), ("Motion"), seeking injunctive relief ordering that Springer be moved from ROSP to a "protective custody facility" pending the resolution of this litigation. The defendants have responded to the Motion. None of the parties have requested a hearing. The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

*I. Facts*

Springer brings this civil rights action against several correctional officers, prison healthcare workers, ROSP Warden Randal Mathena and others. Springer seeks damages under 42 U.S.C. § 1983 for injuries he alleges that he suffered as a result of the excessive use of force against him and subsequent refusal to provide medical care to him. On May 3, 2012, Springer filed the Motion, which was sworn

-1-

to under oath. Springer alleges that, as a result of the filing of this litigation, he has been the subject of continuing reprisals and harassment, including the refusal to provide his daily medications, physical assaults and threats from correctional officers, being placed in proximity with other violent, harassing inmates, being denied soap and toilet paper and refusing access to prison complaint forms.

In particular, Springer alleged that Nurse Whitt had refused to give plaintiff his medication the last seven out of nine pill calls. The Motion does not state what medication was withheld or what, if any, effect it had on Springer's health. There is no information before the court as to whether Springer alleges that this conduct continues. Springer also alleged that, on February 7, 2012, B Housing Unit Manager Kilbourne threatened Springer's safety if he returned to the B Housing Unit. Springer alleged that, after his transfer to the C Housing Unit, he requested a complaint form to report Kilbourne's threat but was told that correctional officers no longer had the authority to pass out complaint forms.

Springer alleged that on February 17, 2012, inmate Justin Hughes was moved into the cell beside his. Springer alleged that Hughes immediately began verbally threatening and harassing him, making anti-Semitic slurs and packing the shared ventilation system with feces. Springer stated that he pushed the emergency button in his cell with no response. He stated that he also filed an emergency grievance with no response. Springer alleges that Sgt. Middleton was aware of the situation but refused to intervene because Springer had filed this suit against him. Springer alleges that Middleton had the cell cleaned later that same day after a nurse complained of the odor of feces coming from his cell.

Springer alleged that on February 24, 2012, Correctional Officer Osbourne denied his request for soap and toilet paper, and he was forced to use toothpaste and shaving cream instead of soap on February 25, 2012. Springer alleged that when he told Unit Manager Kilbourne why he was using toothpaste, Kilbourne became angry and stated, "sooner or later [you're] going to break and when you do the warden will back security's decision to kill your ass."

Springer further alleged that Warden Mathena instituted a policy that, in the C Housing Unit, only a sergeant had the authority to give out complaint forms to the inmates. He also alleged that a sergeant could give out a complaint form only after consulting with a lieutenant.

Springer alleged that on April 16, 2012, Sgt. Mullins told him:

> …[you're] in my back yard, now I am well aware of your little lawsuit against the Brown brothers and I am going to tell you now, guess what happens if those two boys come over here and assault you, or worse you happen to end up dead. … We know how to cover things up, and I can tell you this! There are regular corrections officers named Mullins in every building up here, then you have me and another Sgt. Mullins, Lieutenant Mullins, Captain Mullins, Hearings Officer Mullins, Nurse Mullins, trainees named Mullins in administration, hell the grievance you file goes to Rena Mullins, and guess what, [we're] all related,….

Springer alleges that on April 19, 2012, inmate Mike Brown was placed in an adjoining cell and started asking Springer questions about this lawsuit. Springer states that Inmate Brown told him that he was related to the correctional officers Springer had sued and that he had been placed in the adjoining cell so he "could fuck him up." Springer alleged that, on April 21, 2012, Inmate Brown began

filling up the shared air vent with feces. Springer said that he filed an emergency grievance, but that Sgt. Meade refused to clean the vent out until Springer gave him the receipt for the emergency grievance. Springer said he gave Meade the receipt, and Meade had the vent cleaned out, but Meade did not warn Inmate Brown to stop filling the vent with feces.

Springer alleged that on April 22, 2012, he heard Lt. Gilbert tell Inmate Brown to see if he could damage Springer's legal folders. Springer alleged that Inmate Brown then used some type of long plastic tube to shoot streaks of feces and water into his cell. Springer stated that Sgt. Meade showed Inmate Brown an emergency grievance filed by Springer, prompting Brown to tell Springer, "… the police are not going to do anything to me you fucking Jewish bastard, wait until they let you out in population [you're] a dead man." Springer stated that, because he would not drop his emergency grievance, Sgt. Meade and Lt. Gilbert moved him to the C-3 pod where prisoners daily put feces in the shared vent, flooded the pod with toilet water and attacked each other with feces at outside recreation. Springer further alleged that many of these inmates were infected with HIV and hepatitis B and C.

The defendants' response to the Motion has two affidavits attached to it. One of those affidavits is from M. Younce, Housing Unit Manager of C Building of ROSP. According to Younce, Springer was housed in the C Building at ROSP from February 7, 2012, to June 18, 2012, the date of Younce's affidavit. Younce stated that Springer is housed in segregation, and that segregation is used for those inmates who are unable to function in a general population setting. Younce states that Springer's allegations that he was being harassed by C building correctional officers were untrue. Younce further stated that he did not tolerate "harassing,

threatening, assaulting, retaliating against, or verbally abusing inmates in any manner or for any reason" by his staff. Younce stated that he routinely made rounds in the C building, talking to the inmates, including Springer. He said that Springer had never complained to him of the allegations contained in the Motion. He further stated that ROSP records show that Springer had not placed any other inmates on his "enemy list." Younce knows of one occasion on which Springer complained of another inmate putting feces in a shared vent system. Staff inspected the vent and found no feces. He also knows of one occasion on which Springer and an inmate in an adjoining recreation cage both had feces on them. Neither Springer, nor the other inmate, would tell correctional officers what had occurred.

The defendants also have provided an affidavit from V. Phipps, the Head Nurse at ROSP. Phipps stated that ROSP records show that the ROSP nursing staff had seen Springer 15 times from January 1, 2012, to June 13, 2012, the date of her affidavit, for complaints of constipation, back pain, ear wax and food allergies. She stated that Springer was housed in the medical unit for observation from May 2-4, 2012, for low back pain. Phipps states that, based on her review of Springer's medical records, Springer's medical needs are being addressed and that he is in no imminent danger of physical injury or harm at ROSP.

*II. Analysis*

"The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Furthermore, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802,

811 (4th Cir. 1992) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989)). The party seeking entry bears the burden to establish that these factors support granting a preliminary injunction: (1) the likelihood of irreparable harm to the movant if preliminary injunctive relief is denied; (2) the likelihood of harm to the opposing party if the requested relief is granted; (3) the movant's likelihood of succeeding on the merits of the actions; and (4) the public interest. *See Equity in Athletics, Inc. v. Dep't of Educ.,* 504 F. Supp. 2d 88, 99 (W.D.Va. 2007) (citing *Direx Israel, Ltd.*, 952 F.2d at 811-12).

Based on the information currently before the court, I find that Springer has failed to establish that the entry of a preliminary injunction is appropriate. In particular, Springer has failed to demonstrate any likelihood of irreparable harm if the injunctive relief is denied. In his Motion, Springer admits that many of his complaints were addressed by ROSP staff. Springer admits that he has been moved away from the correctional officers of the B Building. He also admits that he was moved away from the C-5 pod officers and Inmates Hughes and Brown. Insofar as Springer alleges that he continues to be exposed to feces and overflowing toilet water in the C-3 pod, Springer has not alleged that this has had any effect on his health. Further, the defendants have provided evidence from Nurse Phipps that Springer is in no danger of physical injury or harm. Insofar as Springer alleges that correctional officers have created an atmosphere that would make it a danger for him to be released into the general population, Springer is being housed in segregation and has not alleged that he will be returned to general population.

Springer also has failed to demonstrate any likelihood of success on this issue or on the merits of the case. Springer's underlying suit seeks damages, not injunctive relief. With regard to his request for a preliminary injunction, Springer

-6-

has not provided the court with any evidence that demonstrates a likelihood of success on the merits of the underlying claims. Furthermore, Springer has not demonstrated a likelihood of success on his request for injunctive relief. At best, Springer has created a dispute in fact as to whether he has been harassed as a result of this lawsuit. Even if the court were persuaded by his evidence of harassment, however, Springer has provided the court with no evidence that the defendants in this case can provide the relief requested. There is no evidence before the court showing that Warden Mathena or any of the other defendants has the authority to order Springer transferred to a protective custody facility. That being the case, I will recommend that the court deny the Motion.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Springer has failed to demonstrate any likelihood of irreparable harm if injunctive relief is denied;
2. Springer has failed to demonstrate any likelihood of success on this issue or the merits of the case; and
3. Springer has failed to demonstrate that the entry of a preliminary injunction is appropriate.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the Motion.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 29th day of August, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE