CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 07 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| LEVI SPRINGER, | ) Civil Action No. 7:12cv00158 |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| C/O BROWN #1 *et al.*, | ) |
| Defendants. | ) By: Samuel G. Wilson |
| | ) United States District Judge |

Levi Springer, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, claiming that the defendants, ten Red Onion State Prison ("ROSP") and Virginia Department of Corrections ("VDOC") employees, used excessive force against him and then refused to respond to his medical needs and other complaints. Four of the defendants, Karen Bullion, Karen Nelson, Autumn Whitt, and Vicki Phipps[1] (collectively, "the Healthcare Defendants"), moved for summary judgment on Springer's claims against them based on his failure to exhaust administrative remedies before filing this action. The court referred the matter to United States Magistrate Judge Pamela Meade Sargent for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In a thoughtful, carefully considered opinion, the Magistrate Judge found a genuine dispute on the question of whether ROSP's grievance procedure was actually available to Springer, and recommended that the court deny the Healthcare Defendants' summary judgment motion. The Healthcare Defendants have filed objections to the Report and Recommendation. Having reviewed the Report and Recommendation, the objections thereto, and pertinent portions of the record *de novo* in accordance with § 636(b)(1), the court disagrees with the Report and Recommendation, finds

---

[1] Springer spells Phipps' first name as "Vickey" in his complaint, and it appears as such on the ECF case caption.

that Springer inexcusably failed to exhaust his administrative remedies, and dismisses Springer's claims against the Healthcare Defendants.

## I.

Federal law requires that prisoners exhaust their administrative remedies before filing a § 1983 claim. VDOC Operating Procedure 866.1 explains that Virginia prisoners exhaust their administrative remedies by filing a "regular grievance" form, and then appealing any adverse decision through the VDOC Regional Director, and sometimes through the VDOC Deputy Director. An inmate must submit his regular grievance form within thirty days of the event giving rise to his grievance. Before the inmate files a regular grievance, however, he must "informally" attempt to resolve his complaints. Inmates typically accomplish this by submitting an "informal complaint" form to the appropriate department within the prison.

On October 3, 2011, pursuant to VDOC grievance-procedure policies, former ROSP warden Tracy Ray sent Springer a memorandum. It read:

> A review of your informal complaint activity at Red Onion State Prison reveals a pattern of excessive filings and habitual misuse. As a result, other inmates are being hindered in access to the procedure and my staff's ability to investigate and resolve complaints in a timely manner is also hindered. For this reason, your access to the procedure is limited as follows:
>
> LIMITATION PERIOD: October 3, 2011–December 31, 2011
>
> NUMBER OF INFORMAL COMPLAINTS WE WILL PROCESS:
>
> 1 Informal complaint per week
>
> This limitation only affects the filing of informal complaint forms at this time. Excess filings this period will be returned to you. You may grieve this decision through the regular grievance procedure without an informal attempt.

(Reply 4, ECF No. 66-1; see also Reply 4, ECF No. 66-2 (allowing, in Operating Procedure 866.1(IV)(J), limitations on the grievance process when prisoners abuse it)). Consequently, for

the final three months of 2011, Springer could file no more than one informal complaint per week. Though the warden's memorandum expressly allowed Springer to grieve the limitation *without* filing an informal complaint, Springer did not grieve the issue until December 8, 2011, more than a month after his thirty-day grievance window had closed.

On December 6, 2011, ROSP guards came to Springer's cell to take him to a medical appointment. Springer alleges that guards intentionally and needlessly trapped his arms in the pass-through apparatus that prison staff uses to secure prisoners before opening their cell doors, inflicting deep cuts on his arms that required medical attention. While Springer was receiving preliminary medical treatment, Bullion and Nelson ("Qualified Mental Health Professionals" at ROSP) allegedly told Springer that they heard he had tried to cut himself. This, Springer claims, "violated his [Eighth Amendment rights] by sadistically and maliciously attempting to convince [him that] he tried to kill himself, so as to cover up the [guards' conduct]." (Compl. 9, ECF No. 1.) During the next several days, according to Springer, Nurse Whitt violated his Eighth Amendment rights by refusing to change his bandages when he asked, and Nurse Phipps violated his Eighth Amendment rights by refusing to put him in the infirmary when he asked.

Springer submitted a regular grievance regarding Nurse Phipps on January 25, 2012; a regular grievance regarding each of Bullion and Nelson on February 3, 2012; and a regular grievance regarding Nurse Whitt on February 5, 2012—all well after the thirty-day grievance-filing window closed on January 5th. Prison staff returned his grievances as untimely, Springer appealed to the Regional Ombudsman (which is the appropriate course of action when a grievance is rejected as untimely), and the Regional Ombudsman upheld the decision. Springer filed this action approximately two months later.

3

## II.

The Healthcare Defendants have moved for summary judgment based on Springer's failure to exhaust his administrative remedies on the claims against them, in that he failed to file regular grievances in a timely manner. Springer does not dispute that he did not exhaust his administrative remedies. Instead, he "directs this court to deny defendants['] motion for summary judgment," (Resp. 8, ECF No. 64) based on his argument that his grievances were untimely only because the warden had limited him to filing one informal complaint per week. Because the undisputed evidence shows that Springer failed to exhaust his administrative remedies, and finding no indication that Springer was prevented, through no fault of his own, from availing himself of the statutorily required administrative remedies, the court dismisses the claims against the Healthcare Defendants.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)). The Supreme Court has explained that the exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Id. at 219. An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83–84 (2006).

4

Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. See Moore v. Bennett, 517 F.3d 717, 725 (4th Cir. 2008). Thus, a court may excuse a prisoner's failure to exhaust an administrative remedy if a prisoner "through no fault of his own, was prevented from availing himself of" the remedy. Id. The burden of showing that administrative remedies were unavailable lies with the plaintiff. See, e.g., Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (citing Moore, 517 F.3d at 725). The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Messa v. Goord, 652 F.3d 305, 308 (2d Cir. 2011); Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010); Bryant v. Rich, 530 F.3d 1368, 1375–77 & n.15 (11th Cir. 2008); Pavey v. Conley, 544 F.3d 739, 741–42 (7th Cir. 2008); Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003); cf. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005) ("Accordingly, we conclude that a district court may raise the issue of exhaustion of remedies on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue.").[2]

---

[2] Though the Second, Third, Fifth, Seventh, Ninth, and Eleventh Circuit Courts of Appeals agree that exhaustion is for the judge to decide, they disagree on whether the disposition is properly characterized as a grant of summary judgment or a dismissal. Compare Bryant, 530 F.3d at 1374–75 ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, . . . it 'should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment.'" (quoting Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368–69 (9th Cir. 1988))), and Wyatt, 315 F.3d at 1119–20 (explaining that failure to exhaust subjects a prisoner's claims to dismissal rather than summary judgment), with

Here, the undisputed evidence shows that Springer did not exhaust his administrative remedies and that the warden's moderate limitation on Springer's ability to file informal complaints did not make Springer's administrative remedies "unavailable." Springer claims he was forced to delay his exhaustion of administrative remedies against the Healthcare Defendants because he needed to grieve other, more pressing matters first. Notwithstanding the fact the warden's limitation expired nearly a week before Springer's grievance-filing deadline passed, there are several problems with Springer's argument. First, VDOC's grievance procedures do not require a prisoner to submit a separate informal complaint for each alleged wrong. In fact, the grievance policy places *no* limit on the scope of the informal complaint, other than requiring that the prisoner submit it in good faith. (See Reply 1–12, ECF No. 66-2.) Thus, contrary to Springer's entirely unsupported claim that he was forced to prioritize his complaints, he was free to file an informal complaint that included all of his various allegations arising from the events of December 6th, and then follow it with an unlimited number of timely, tailored regular grievance forms. Instead, Springer filed the four grievances pertaining to the Healthcare Defendants on January 25, February 3, and February 5, 2012, well after the events giving rise to his claims here. Second, the burden in these cases is on the prisoner to show that *through no fault of his own* he was prevented from exhausting his administrative remedies. Here, because of Springer's repeated abuse of grievance procedures, the warden imposed a moderate limitation pursuant to

---

Drippe, 604 F.3d at 782 (dealing with the issue after summary judgment), and Dillon, 596 F.3d at 273 (characterizing the issue as one for summary judgment). The Fourth Circuit Court of Appeals routinely deals with PLRA exhaustion issues following the entry of both dismissal and summary judgment orders. Compare XYZ Corr. Health Servs., Inc., 407 F.3d 674 (dismissal), with Dumbuya v. Riley, 248 F. App'x 487 (4th Cir. 2007) (summary judgment).

Given the similarities between the question of exhaustion and questions like personal jurisdiction, see, e.g., Pavey, 544 F.3d at 741, it strikes the court as analytically consistent to think of the disposition as a dismissal rather than summary judgment. Accordingly, the court dismisses Springer's claims against the Healthcare Defendants rather than entering summary judgment. But cf. Blakely v. Wards, 701 F.3d 995, 1000 (4th Cir. 2012) (finding no important distinctions between "dismissal" and "summary judgment" phraseology, at least for the purposes of the three-strikes provision in 28 U.S.C. § 1915(g)).

VDOC operating procedure on Springer's ability to file complaints. Springer offers no argument and no evidence that the warden's limitation was *not* a result of Springer's abusive grievance practices.[3] Further, although the warden's memorandum expressly allowed Springer to grieve the limitation without filing an informal complaint, Springer chose not to do so until two months later, which rendered his grievance of the matter untimely. Third and finally, allowing an inmate to proceed in a case like this, in the absence of any support for his claim that other more important matters precluded exhaustion, would give habitual grievance-procedure abusers like Springer, who inevitably earn restrictions on their access to those grievance procedures, a free pass on the mandatory exhaustion requirements in 42 U.S.C. § 1997e. Accordingly, the court dismisses Springer's claims against the Healthcare Defendants.

### III.

For the reasons stated, the court dismisses Springer's claims against the Healthcare Defendants.

**ENTER**: March 7, 2013.

UNITED STATES DISTRICT JUDGE

---

[3] Springer offers no evidence whatsoever that the state of affairs was based on anything other than Springer's abuse of the grievance procedures, and the court has no reason to believe that it was not. Springer is a frequent litigant who currently has three cases naming a total of thirty-one defendants pending in this court.

The court notes that in another of Springer's pending cases, the defendants moved for summary judgment based on Springer's failure to exhaust administrative remedies, and Springer opposed the summary judgment motion based partly on an administrative-remedy limitation similar to (but more restrictive than) the one in this case. In that case, the Magistrate Judge filed a report finding a genuine dispute on the issue of exhaustion, and recommending that the court deny the defendants' motion for summary judgment. In that case, the court adopted the Magistrate Judge's Report and Recommendation and denied the defendants' summary judgment motion. The salient difference is that here, unlike there, the defendants objected to the Magistrate Judge's Report and Recommendation. See Springer v. Mathena, 7:12cv00074 (W.D. Va. filed Feb. 15, 2012).